SANDRA L. McDONOUGH (SBN 193308)
smcdonough@paulplevin.com
JOANNE ALNAJJAR BUSER (SBN 295191)
jbuser@paulplevin.com
JACQUELINE SEITER (SBN 306923)
jseiter@paulplevin.com
**PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP**
101 West Broadway, Ninth Floor
San Diego, California 92101-8285
Telephone: 619-237-5200
Facsimile: 619-615-0700

Attorneys for Defendants The Regents of the
University of California, Gregory S. Gilbert,
Madeleine Fairbairn, Flora Lu, and S. Ravi Rajan

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| ALLISON SKIDMORE, | Case No. 20-cv-06415-BLF |
| Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, GREGORY S. GILBERT, MADELINE FAIRBAIRN, FLORA LU, AND S. RAVI RAJAN | Date: TBD<br>Time: 9:00 a.m. |
| Defendants. | Judge: Hon. Beth Labson Freeman<br>Crtrm.: 3<br>Trial Date: Not Set |

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

740332.2

Case No. 20-cv-06415-BLF
DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES

## NOTICE OF MOTION

TO PLAINTIFF ALLISON SKIDMORE AND HER ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on _____ at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3, 5th Floor of the above-captioned Court, Defendants The Regents of the University of California ("The Regents"), Gregory Gilbert, Madeleine Fairbairn, Flora Lu, and S. Ravi Rajan (collectively, The Regents and the individual defendants are referenced herein as "Defendants"), will and hereby do move the Court for an order to strike the third cause of action from Plaintiff Allison Skidmore's ("Plaintiff" or "Skidmore") Complaint ("Complaint"), and an award of fees and costs for making this motion.

The Special Motion to Strike will be made based upon this Notice of Motion; the Memorandum of Points and Authorities in support thereof; the Declarations of Gregory Gilbert, Flora Lu, Madeleine Fairbairn, S. Ravi Rajan, Daniel Press, Teresa Maria Linda Scholz, and Michael Loik; the exhibits filed with the Court; the entire court file on this matter; and on such evidence and argument as may be presented at the hearing on this matter.

## STATEMENT OF RELIEF SOUGHT

Pursuant to California Code of Civil Procedure section 425.16 (California's "anti-SLAPP" statute), Defendants seek an order striking the third cause of action (Intrusion of Plaintiff's Right to Privacy [False Light]) from the Complaint, as well as their attorneys' fees and costs for making the motion. It is well established that anti-SLAPP motions are available in federal court. *Thomas v. Fry's Electronics, Inc.*, 400 F.3d 1206, 1206 (9th Cir. 2005). Defendants file this motion, together with the accompanying motion to dismiss.

Dated:  November 5, 2020                    PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP


                                            By:    ___*/s/ Joanne Alnajjar Buser*___
                                                   SANDRA L. McDONOUGH
                                                   JOANNE ALNAJJAR BUSER
                                                   JACQUELINE SEITER
                                                   Attorneys for Defendants The Regents of the
                                                   University of California, Gregory S. Gilbert,
                                                   Madeleine Fairbairn, Flora Lu, and S. Ravi Rajan

**TABLE OF CONTENTS**_Toc55467587

I.  INTRODUCTION .................................................................................................1

II. FACTUAL BACKGROUND .................................................................................2

    A.  Plaintiff Allison Skidmore ..........................................................................2

    B.  Skidmore Publishes A Controversial Facebook Post Calling For Harm To China ............................................................................................................2

    C.  An Anonymous Source Who Saw The Facebook Post Provides It To The ENVS Faculty And Asks Them To Take Action .........................................3

    D.  The ENVS Faculty Are Compelled To Respond To Skidmore's Facebook Post ..............................................................................................................3

        1.  The April 2, 2020 Statement ..............................................................4

        2.  The April 3, 2020 Statement ..............................................................5

        3.  The April 10, 2020 Statement ............................................................7

    E.  UCSC Finds Skidmore Did Not Violate Any Campus Policy ....................7

    F.  Defendants Have Not Disciplined Skidmore For Her Facebook Post .......7

III. APPLICABLE STANDARDS ...............................................................................8

    A.  Section 425.16 Is Broadly Construed To Eliminate Litigation At An Early Stage ...........................................................................................................8

    B.  Shifting Burden Of Proof ............................................................................9

IV. SKIDMORE'S FALSE LIGHT CLAIM ARISES FROM PROTECTED ACTIVITY ...........................................................................................................9

V.  SKIDMORE CANNOT DEMONSTRATE A REASONABLE PROBABILITY OF SUCCESS ON HER FALSE LIGHT CLAIM ..................................................10

    A.  Defendants Are Immune From Liability For Skidmore's False Light Claim ..........10

        1.  Eleventh Amendment Sovereign Immunity Bars Skidmore's Claim ..........10

            a.  Sovereign Immunity Protects The Regents ......................................11

            b.  Sovereign Immunity Also Bars Claims Against The Individual Defendants ........................................................................................12

        2.  Defendants Are Additionally Immune From Skidmore's False Light Claim Under California's Government Code ...............................................13

            a.  Government Code Section 815(a) Mandates That The Regents Cannot Be Sued for Tort Liability ......................................13

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

b. Neither The Regents Nor The Individual Defendants Can Be Sued for Misrepresentations Under Government Code Sections 818.8 and 822.2.................................................................13

3. Academic Freedom Protects The Faculty Defendants' Statements ............14

4. California Civil Code Section 47(c) Protected Defendants' Common Interest Statements ..............................................................................15

B. Skidmore Cannot Prevail On The Merits Of Her False Light Claim ......................17

1. Defendants Never Placed Skidmore In A False Light Because They Never Identified Her In Their Statements ..................................................17

2. None Of Defendants' Statements Are Provably False ................................17

3. Defendants' Statements Are Not "Highly Offensive" ................................19

4. Skidmore Was Not Harmed Because Of Defendants' Statements ..............20

VI. DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS ...................20

VII. CONCLUSION ........................................................................................21

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Armstrong v. Meyers*
    964 F.2d 948 (9th Cir.1992) ............................................................................................... 11

*Ault v. Hustler Magazine, Inc.*
    860 F.2d 877 (9th Cir. 1988) ............................................................................................. 19

*Brooks v. Sulphur Springs Valley Elec. Co-op.*
    951 F.2d 1050 (9th Cir. 1991) ........................................................................................... 11

*BV Eng'g v. Univ. of Cal., Los Angeles*
    858 F.2d 1394 (9th Cir. 1988) ........................................................................................... 11

*Cholla Ready Mix, Inc. v. Civish*
    382 F.3d 969 (9th Cir. 2004) ............................................................................................. 11

*Demers v. Austin*
    746 F.3d 402 (9th Cir. 2014) ............................................................................................. 14

*Doe v. Lawrence Livermore Nat'l Lab.*
    131 F.3d 836 (9th Cir. 1997) ............................................................................................. 12

*Dworkin v. Hustler Magazine Inc.*
    867 F.2d 1188 (9th Cir. 1989) ........................................................................................... 19

*Flint v. Dennison*
    488 F.3d 816 (9th Cir. 2007) ............................................................................................. 12

*Hafer v. Melo*
    502 U.S. 21 (1991) .............................................................................................................. 12

*Jackson v. Hayakawa*
    682 F.2d 1344 (9th Cir.1982) ....................................................................................... 11, 12

*Keyshian v. Bd. of Regents*
    385 U.S. 589 (1967) ...................................................................................................... 14, 15

*Mitchell v. Los Angeles Cmty. College Dist.*
    861 F.2d 198 (9th Cir. 1988), *cert. denied*, 490 U.S. 1081 .................................................. 11

*Partington v. Bugliosi*
    56 F.3d 1147 (9th Cir. 1995) ......................................................................................... 18, 19

DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

*Pennhurst State Sch. & Hosp. v. Halderman*
465 U.S. 89 (1984) ....................................................................................... 11

*Quade v. Arizona Bd. of Regents*
700 F. App'x 623 (9th Cir. 2017)............................................................... 11, 13

*Regents of the Univ. of Cal. v. Doe*
519 U.S. 425 (1997) ....................................................................................... 11

*Rodriguez v. Maricopa Cty. Cmty. College Dist.*
605 F.3d 703 (9th Cir. 2010) .......................................................................... 15

*U.S. v. Associated Press, D.C.*
52 F. Supp. 362 (S.D.N.Y. 1943) .................................................................. 15

*Vaughn v. Regents of Univ. of Cal.*
504 F. Supp. 1349 (E.D. Cal. 1981) .............................................................. 11

*Wasson v. Sonoma Cty. Jr. College Dist.*
4 F. Supp. 2d 893 (N.D. Cal. 1997) .............................................................. 11

**California Cases**

*Adkins v. California*
50 Cal. App. 4th 1802 (1996), overruled on other grounds in *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143 (1998) .............................................. 14

*Briggs v. Eden Council for Hope & Opportunity*
19 Cal. 4th 1106 (1999) ................................................................................... 9

*Carpenter v. Jack in the Box Corp.*
151 Cal. App. 4th 454 (2007) ......................................................................... 20

*City of Cotati v. Cashman*
29 Cal. 4th 69 (2002)........................................................................................ 9

*Club Members for an Honest Election v. Sierra Club*
45 Cal. 4th 309 (2008) ...................................................................................... 8

*Copp v. Paxton*
45 Cal. App. 4th 829 (1996).......................................................................... 18

*Deaile v. Gen. Tel. of Cal.*
40 Cal. App. 3d 841 (1974) ........................................................................... 15

*Equilon Enters., LLC v. Consumer Cause, Inc.*
29 Cal. 4th 53 (2002)......................................................................................... 8

*Ferlauto v. Hamsher*
74 Cal. App. 4th 1394 (1999).......................................................................... 18

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES

*Franklin v. Dynamic Details, Inc.*
    116 Cal. App. 4th 375 (2004)..................................................................18

*Gantry Const. Co. v. Am. Pipe & Const. Co.*
    49 Cal. App. 3d 186 (1975)....................................................................16

*Hunter v. CBS Broad. Inc.*
    221 Cal. App. 4th 1510 (2013)..................................................................8

*Kashian v. Harriman*
    98 Cal. App. 4th 892 (2002)...................................................................16

*Ketchum v. Moses*
    24 Cal. 4th 1122 (2001)........................................................................20

*Kramer v. Ferguson*
    230 Cal. App. 2d 237 (1964)..................................................................16

*Lundeen Coatings Corp. v. Dep't of Water & Power*
    232 Cal. App. 3d 816 (1991)..................................................................14

*Lundquist v. Reusser*
    7 Cal. 4th 1193 (1994).........................................................................16

*McGarry v. Univ. of San Diego*
    154 Cal. App. 4th 97 (2007)..................................................................18

*Neal v. Gatlin*
    35 Cal. App. 3d 871 (1973)...................................................................16

*Noel v. River Hills Wilsons, Inc.*
    113 Cal. App. 4th 1363 (2003)................................................................16

*Park v. Bd. of Trs. of Cal. State Univ.*
    2 Cal. 5th 1057 (2017).........................................................................9

*Price v. Operating Eng'rs Local Union No. 3*
    195 Cal. App. 4th 962 (2011).................................................................17

*Searcy v. Gibbel*
    177 Cal. App. 3d 792 (1986)..................................................................13

*Steed v. Dep't of Consumer Affairs*
    204 Cal. App. 4th 112 (2012)..............................................................9, 10

*Talus v. Loftus*
    40 Cal. 4th 683 (2007).....................................................................16, 18

*Tamkin v. CBS Broad., Inc.*
    193 Cal. App. 4th 133 (2011)..............................................................9, 18

DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES

*Wilson v. Cable News Network, Inc.*
  7 Cal. 5th 871 (2019)..................................................................................................... 8, 9

**Federal: Statutes, Rules, Regulations, Constitutional Provisions**

U.S. Const. amend. XI.................................................................................................................. 10

**State: Statutes, Rules, Regulations, Constitutional Provisions**

Cal. Civ. Code § 47(c).......................................................................................................... 15, 16

Cal. Civ. Code § 48 ..................................................................................................................... 16

Cal. Const. art. IX § 9................................................................................................................. 11

Cal. Gov't Code § 815(a)........................................................................................................ 2, 13

Cal. Gov't Code § 818.8 ......................................................................................................... 2, 14

Cal. Gov't Code § 822.2 .................................................................................................... 2, 13, 14

Code Civ. Proc. § 425.16 .................................................................................................*passim*

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

740332.2                                    vi                        Case No. 20-cv-06415-BLF
DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES

1

2

## MEMORANDUM OF POINTS & AUTHORITIES

### I. INTRODUCTION

Skidmore is a PhD candidate in the University of California, Santa Cruz ("UCSC")[1]
Environmental Studies ("ENVS") Department.  Several months ago, Skidmore published a
vitriolic Facebook post advocating, in part, "[t]here's a special place in hell reserved for the f*ing
Chinese and their archaic culture," and her desire for COVID-19 to "wipe[] the whole country" of
China "off the planet."  Concerned that Skidmore's post could possibly incite harm to UCSC
community members of Chinese origin, and particularly in the wake of school shootings at
Virginia Tech, Parkland and Columbine high schools, several ENVS faculty members exercised
their First Amendment rights to publish statements to the campus community disavowing the
content of the Facebook post, while affirming their commitment to UCSC's values of diversity,
tolerance and inclusiveness on campus.

In the third cause of action of her Complaint, Skidmore asserts a common law false light
claim against Defendants based on the faculty Defendants' statements to the campus community
criticizing her controversial Facebook post promoting harm to China and its people.  The Court
should grant Defendants' special motion to strike this cause of action because the disputed faculty
publications are protected faculty expressions under the academic freedom doctrine and fall
squarely within the ambit of the anti-SLAPP statute, Code of Civil Procedure section 425.16(e).
Specifically, the faculty opinions and criticisms lodged about the Facebook post related to issues
of widespread public interest, namely, racism, the COVID-19 pandemic, diversity, tolerance and
inclusiveness.  All of the complained-of faculty statements were made on the precipice of
widespread protests concerning the government's handling of the pandemic and issues of racism.
The faculty Defendants' statements that Plaintiff challenges in her false light claim are the very
essence of free speech and are precisely the kinds of opinions that the statute was enacted to
protect.  Thus, Defendants easily satisfy the first prong of the anti-SLAPP analysis for establishing

---

[1] UCSC is a campus owned and operated by The Regents.

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES

1    protected conduct in connection with issues of public interest.

2            In addition, Plaintiff will not be able to satisfy her burden of proof as to the second prong

3    of the anti-SLAPP analysis – to demonstrate that her false light claim will succeed on the merits.

4    Not only does Eleventh Amendment Sovereign Immunity bar the false light claim, but Skidmore

5    cannot prove that any of the Defendants created a false impression or asserted any provably false

6    facts about her.  Indeed, Defendants' publications about Plaintiff's Facebook post, which are

7    simply criticisms of her controversial statements, did not even identify Plaintiff by name.

8    Furthermore, Plaintiff's false light claim is also barred by the immunities set forth in Government

9    Code sections 815(a), 818.8 and 822.2, the common interest privilege, and the doctrine of

10   academic freedom.

11           Accordingly, Defendants request that this Court grant their special motion to strike the

12   third cause of action for false light pursuant to the anti-SLAPP statute and award Defendants their

13   attorneys' fees and costs for making this motion.

14                              **II.  FACTUAL BACKGROUND**

15   **A.     Plaintiff Allison Skidmore**

16           Skidmore is a PhD candidate in the ENVS Department at UCSC with an academic interest

17   in the trafficking of endangered wildlife.  ECF No. 1 ¶¶ 13, 15; Declaration of Gregory Gilbert

18   ("Gilbert Dec."), ¶ 3.  Skidmore is scheduled to graduate from UCSC with her PhD in or about

19   June 2021.  ECF No. 1 ¶¶ 13, 15; Gilbert Dec., ¶ 3.

20   **B.     Skidmore Publishes A Controversial Facebook Post Calling For Harm To China**

21           On or about March 30, 2020, Skidmore posted the following vitriolic Facebook post:

22   If you thought things would change in China due to the outbreak, think again.
     There's a special place in hell reserved for the f*ing Chinese and their archaic
23   culture.  Chian's [sic] state run news agency is now recommending bear bile (one
     of the cruelest forms of animal torture) as a treatment for Covid-19.  I knew the
24   "wildlife ban" in China was just a façade.

25   Traditional medicines containing threatened wildlife parts, such as pangolin scales,
26   tiger bones, saiga horn, rhino horn and the bile of captive-bred bears will continue
     to be sold in China.  I hate Trump with every fiber of my being but his description
27   of Covid-19 as the Chinese Virus is the most accurate thing he's ever said- I wish it
     had wiped the whole country off the planet.

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

ECF No. 1 ¶ 33.

**C.      An Anonymous Source Who Saw The Facebook Post Provides It To The ENVS Faculty And Asks Them To Take Action**

On March 31, 2020, an anonymous e-mail address provided a copy of Skidmore's Facebook post to the ENVS faculty.  Gilbert Dec., ¶ 4, Ex. 1; Declaration of Madeleine Fairbairn ("Fairbairn Dec."), ¶ 3; Declaration of Flora Lu ("Lu Dec."), ¶ 3; Declaration of Daniel Press ("Press Dec."), ¶ 3; Declaration of S. Ravi Rajan ("Rajan Dec."), ¶ 3; Declaration of Teresa Maria Linda Scholz ("Scholz Dec."), ¶ 3; *see also* ECF No. 1 ¶ 21.  In light of the fact that Asian community members were already at risk of, and in fact were, being physically attacked in response to the recent COVID-19 pandemic, the individual called on the ENVS faculty "to find a proper solution" for Skidmore's "racist," xenophobic," and "pro-genocide" message that expressly wished the virus would have "wiped the whole country" of China "off the planet" and advocated a "place in hell reserved for the f*ing Chinese and their archaic culture."  Gilbert Dec., ¶ 4, Ex. 1; Fairbairn Dec., ¶ 3; Lu Dec., ¶ 3; Press Dec., ¶ 3; Rajan Dec., ¶ 3.

In addition, the individual informed the faculty that the sender had already reached out to the media about Skidmore's post.  Gilbert Dec., ¶ 4, Ex.1; Fairbairn Dec., ¶ 3; Lu Dec., ¶ 3; Press Dec., ¶ 3; Rajan Dec., ¶ 3.  Shortly thereafter, an Asian-American online news agency, NextShark, re-published Skidmore's Facebook post, which attracted viral attention.  ECF No. 1 ¶¶ 22, 27.

**D.      The ENVS Faculty Are Compelled To Respond To Skidmore's Facebook Post**

The anonymous e-mail informant was not the only one who requested UCSC to respond to Skidmore's Facebook post.  A biology professor at the University of Wisconsin who read the post in the news implored the ENVS faculty to "take appropriate action to not condone, but rather condemn" Skidmore's "harmful," "racist," and "offensive" "hate speech."  Lu Dec., ¶ 4, Ex. 1; Press Dec., ¶ 4; Rajan Dec., ¶ 4.  Moreover, several of the ENVS faculty members were themselves hurt, offended, and scared by Skidmore's post, particularly in light of the recent violent and xenophobic sentiments expressed against the Asian community in response to the COVID-19 pandemic.  Fairbairn Dec., ¶ 4; Gilbert Dec., ¶ 5; Lu Dec., ¶ 5; Press Dec., ¶ 5; Rajan Dec., ¶ 5.

Because Skidmore's Facebook post palpably affected at least some UCSC community members, and potentially many more, the ENVS faculty felt compelled to reaffirm a commitment to UCSC's values of diversity, tolerance, and inclusiveness and did not in any way condone the views expressed in the Facebook post made by Skidmore.  Fairbairn Dec., ¶ 4; Gilbert Dec., ¶ 6; Lu Dec., ¶ 5; Press Dec., ¶¶ 5-6; Rajan Dec., ¶ 5; *see also* Scholz Dec., ¶¶ 8-9. Exs. 1-4.  The faculty did so in three separate statements to various members of the student community.

### 1.    The April 2, 2020 Statement

After much deliberation by the ENVS faculty, on April 2, 2020, Defendant Gregory Gilbert, then ENVS Department Chair, e-mailed a statement to the ENVS graduate-student community that read in its entirety:

> Dear Environmental Studies community,
>
> A member of our student community recently posted an appalling, hateful, and violent comment on social media.  The comment was disturbingly xenophobic and deeply hurtful not only to the community it targeted, but to all of us.
>
> As a faculty, we are outraged and saddened that a member of our student community holds these views, and additionally demonstrated profound thoughtlessness and poor judgment in making such abhorrent views public.  We denounce the views expressed in this student's comment in the strongest possible terms.  Such views are an antithesis to our core values as a department, and to the UCSC Principles of Community.
>
> The views were expressed on a private social media account, without any formal UCSC affiliation.  As such, our disciplinary options are circumscribed.  Nonetheless, we would like to underscore that freedom of expression is not just a right.  With it comes a responsibility to nurture and care for all research, and teaching.
>
> Moving forward, the Environmental Studies faculty is committed to creating a department climate and culture centered in equity, justice, and inclusion, which makes clear that hate speech has absolutely no place in our community.  Our response to this highly disturbing post on social media is merely the beginning of a much longer-term conversation about how we can grapple with issues of systemic and institutional racism.  We are committed to doing the reflexive and difficult work, which is necessary to enable healing to occur.

Gilbert Dec., ¶ 7, Ex. 2; *see also* Fairbairn Dec., ¶ 4; Lu Dec., ¶ 5; Press Dec., ¶¶ 6, 8; Rajan Dec., ¶ 6.

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

740332.2                                4                        Case No. 20-cv-06415-BLF
DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES

Despite her virulent Facebook post, and as a courtesy to Skidmore, her then-PhD advisor, Daniel Press, warned Skidmore that a response by the ENVS faculty would be forthcoming.  Press Dec., ¶ 7, Ex. 1.  He acknowledged that Skidmore's Facebook post was an exercise of protected free speech, and, as such, it was only appropriate for the faculty to exercise its free speech rights in response.  *Id.*  Press noted that the faculty statement would not mention Skidmore or her PhD project by name, and it did not.  *Id.*

In response to the note from Press, Skidmore matter-of-factly acknowledged that her Facebook post "crossed a major line" and was "completely inappropriate," and she later acknowledged she understood the response from the faculty was necessary.  Press Dec., ¶¶ 7, 9, Ex. 1; Gilbert Dec., ¶ 9, Ex.  2.

## 2. The April 3, 2020 Statement

On April 3, 2020, in response to a number of student inquiries regarding Skidmore's Facebook post, particularly from students in the Asian community who were concerned about it, the ENVS Diversity Committee – comprised of faculty Defendants S. Ravi Rajan, Madeleine Fairbairn, and Flora Lu – released an additional statement to address the UCSC campus at large. The statement read in its entirety:

Background:

Earlier this week, an ENVS Graduate Student posted on Facebook stating, amongst other things, that "There is a special place in hell reserved for the f*ing Chinese and their archaic culture. . . I hate Trump with every fiber of my being but his description of the Covid-19 as the Chinese Virus is the most accurate thing he's ever said – I wish it had wiped the whole country off the planet."

Ever since the Facebook Post, the ENVS Diversity Committee has received a number of inquiries about where we as a committee stand.  The Diversity Committee is comprised of three faculty members, Chair Ravi Rajan, Madeleine Fairbairn and Flora Lu, and multiple graduate students.  This statement is solely the work of the faculty on the committee, who have intentionally protected the graduate student members out of a duty of care.  Professor Rajan interrupted his medical leave to work on this out of a sense of moral obligation.

Statement:

We welcome the fact that the ENVS department met immediately to discuss this incident and wrote a public statement in condemnation.  We also welcome the

DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES

general agreement that this public statement is first of a series of follow-up steps.

We believe that three concrete follow-up steps are required.

First, it is critically important to undertake a full and thorough investigation of this individual who posted this virulently racist and hateful message. We need to know who her interlocutors were; whether she has other, possibly physically violent, partners; whether she has access to guns or other means of causing bodily harm; and whether she has supporters of her viewpoints amongst the graduate student community and perhaps even the faculty. As things stand, we do not have definitive answers to these important questions, and in the absence of these answers, some amongst us are fearful for our health, safety and wellbeing. The only way forward is to request the law enforcement authorities to investigate. This is hate speech; there are norms that we must follow; and amongst these should be a call for an independent investigation, and a commitment by the department to fully cooperate and furnish evidence.

Secondly, we need to systematically investigate how and why our pedagogical processes have failed to such an extent that a Ph.D. student of ours who has passed the core curriculum is capable of making these hateful statements without any understanding of the basic historical facts that belie their claims. How is it that a product of our department could spew a narrative that is very similar in its key assumptions to what political theorists call Ecologism – a right wing "green" neo-Malthusian ideology with deeply pernicious historical roots, including Nazism? Ecologism favors nativism, privileges some people (European origin Whites especially), and holds other species over marginalized people. Each of these features are evident in this student's Facebook post. This is not just a case of free speech; it is an egregious case of placing false narratives in the public domain, and with a genocidal viciousness. Again, how is a qualified PhD student of ours neglecting to mention the history of species extinctions, and the sheer ecological devastation wrong by European Colonialism in Asia, Africa, and the Americas over the course of three centuries? Moreover, how is there no apparent awareness of the landscape changes under colonial and post-colonial policies that resulted in the emergence of a commodity trade in wildlife, and indeed of novel viruses – of which the Chinese story is but one node in a global arc? We argue that it is not enough, in this day and age, to hide behind the smokescreen of disciplinary depth to justify ignorance on matters that historically have had genocidal implications. We need to carefully look at the epistemological and pedagogical assumptions of our curriculum. Note that we are not policing free speech, only demanding standards of rigor and morality that constitute our basic values as scholar.

Last, but by no means least, we urge the campus community at large to engage in a thoughtful conversation about diversity. We would like to suggest respectfully that whilst diversity is often conflated with representation, it is about much more. It is, at the outset, about a commitment to acknowledge the validity of myriad perspectives, points of view, and disciplines. Next, the commitment to diversity must entail a duty of respect and care for all. This includes codes of conduct, due processes, rules of evidence, the eschewal of any form of aggression, a rigorous

DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES

whistleblower system, and an ombuds office with power to investigate and act when racism arises. We, as a scholarly community, must perpetually work to address both the kinds of overt racism depicted in this Facebook post and the more systemic, everyday forms of racism experienced by some of our faculty and students.

Lu Dec., ¶¶ 7-9, Ex. 2; Fairbairn Dec., ¶¶ 6-8; Rajan Dec., ¶¶ 8-10. The statement was intended for circulation among UCSC faculty and students only. Fairbairn Dec., ¶ 9; Lu Dec., ¶ 10; Rajan Dec., ¶ 11.

### 3. The April 10, 2020 Statement

Finally, because students continued to reach out for more information about what the ENVS Department planned to do in response to Skidmore's Facebook post, the ENVS faculty issued a third response on April 10, 2020, this time specifically directed at ENVS undergraduate students. Gilbert Dec., ¶ 10, Ex. 3. This statement largely tracked the first joint faculty statement issued on April 2, 2020. *Id.*

### E. UCSC Finds Skidmore Did Not Violate Any Campus Policy

On April 1, 2020, at the ENVS Department's request, UCSC's Chief Diversity Officer, Teresa Maria Linda Scholz, spoke with Skidmore to discuss her Facebook post. ECF No. 1 ¶ 24; Scholz Dec., ¶ 4. Dr. Scholz ultimately concluded Skidmore had engaged in protected free speech and UCSC could not take any disciplinary action in response to the post. Scholz Dec., ¶ 4.

Dr. Scholz also received concerns about the Facebook post; thus, she requested that the Dean of Students direct the Student Conduct Office to also review the post to ensure it did not violate any campus policies. *Id.* ¶¶ 5-6. The Associate Director of Student Conduct determined no violation of campus policy occurred, and, thus, no discipline was warranted. *Id.*, ¶¶ 6-7; ECF No. 1 ¶¶ 36-37.

### F. Defendants Have Not Disciplined Skidmore For Her Facebook Post

Defendants have not disciplined Skidmore in any way for the views she expressed in her Facebook post. Fairbairn Dec., ¶¶ 10, 12; Gilbert Dec., ¶ 11; Lu Dec., ¶¶ 11, 13; Press Dec., ¶ 11; Rajan Dec., ¶¶ 12, 14. She remains a PhD candidate on schedule to receive her degree in June 2021. ECF No. 1 ¶¶ 13, 15; Gilbert Dec., ¶ 11; Press Dec., ¶ 11; Declaration of Michael Loik

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

740332.2                    7                    Case No. 20-cv-06415-BLF

DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES

1    ("Loik Dec."), ¶ 9.  When Skidmore's former PhD advisor left UCSC for other employment in

2    June 2020, the faculty assisted Skidmore in timely finding and securing a new advisor and

3    forming a new dissertation review committee so that she could remain on her planned graduation

4    track.  Loik Dec., ¶¶ 3-8, Exs. 1-2.  Her graduation remains on track for June 2021.  ECF No. 1 ¶¶

5    13, 15; Gilbert Dec., ¶ 11; Loik Dec., ¶ 9; Press Dec., ¶ 11.

### III.  APPLICABLE STANDARDS

**A.    Section 425.16 Is Broadly Construed To Eliminate Litigation At An Early Stage**

8         California Code of Civil Procedure section 425.16, commonly referred to as California's

9    "anti-SLAPP" statute,[2] permits a defendant to eliminate certain types of lawsuits or claims at an

10   early stage.  Cal. Code Civ. Proc. § 425.16(a); *Hunter v. CBS Broad. Inc.*, 221 Cal. App. 4th 1510,

11   1519 (2013); *Equilon Enters., LLC v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 65 (2002).

12   Specifically, the statute was enacted to combat "a disturbing increase in lawsuits brought primarily

13   to chill the valid exercise of the constitutional right of freedom of speech."  Cal. Code Civ. Proc. §

14   425.16(a).  It is well established that anti-SLAPP motions are available in federal court.  *Thomas*,

15   400 F.3d at 1206.

16        Section 425.16 specifically provides that "[a] cause of action against a person arising from

17   any act of that person in furtherance of the person's right of petition or free speech . . . in

18   connection with a public issue shall be subject to a special motion to strike, unless the court

19   determines that the plaintiff has established that there is a probability that the plaintiff will prevail

20   on the claim."  Cal. Code Civ. Proc. § 425.16(b)(1).  Protected statements include any conduct in

21   furtherance of the exercise of the constitutional right of free speech in connection with a public

22   issue or an issue of public interest.  *Id.* § 425.16(e).  The California Legislature has reaffirmed that

23   the anti-SLAPP statute "shall be construed broadly," and courts have accordingly repeatedly

24   emphasized its expansive application.  *Id.* § 425.16(a); *Wilson v. Cable News Network, Inc.*, 7 Cal.

25

26   [2] The acronym "SLAPP" stands for "Strategic Lawsuit Against Public Participation."  *Club*

27   *Members for an Honest Election v. Sierra Club*, 45 Cal. 4th 309, 312 (2008).  All further

28   references to "Section 425.16" refer to section 425.16 of the California Code of Civil Procedure.

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

740332.2                                      8                        Case No. 20-cv-06415-BLF
DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES

1    5th 871, 900 (2019); *Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133, 143 (2011); *Briggs v.*

2    *Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1119-20 (1999).

3    **B.**      **Shifting Burden Of Proof**

4        Courts evaluate anti-SLAPP motions using a two-step process. *Episcopal Church Cases*,

5    45 Cal. 4th 467, 477 (2009). First, the moving defendant must show the underlying cause of

6    action, "arise[s] from," either in whole or in part, protected activity. *Park v. Bd. of Trs. of Cal.*

7    *State Univ.*, 2 Cal. 5th 1057, 1061 (2017). If the defendant makes this showing, the burden shifts

8    to the plaintiff to show by "competent admissible evidence" a reasonable probability – not a

9    possibility, or a dispute of fact – that she will prevail on the merits of the challenged claims. *Steed*

10    *v. Dep't of Consumer Affairs*, 204 Cal. App. 4th 112, 124 (2012). If the plaintiff fails to meet that

11    burden, the court must strike the claim. *Wilson*, 7 Cal. 5th at 884.

12        As detailed herein, Skidmore's false light claim falls directly within the scope of the anti-

13    SLAPP statute, and she is not able to show even the slightest probability of prevailing on her

14    claim.

15    **IV. SKIDMORE'S FALSE LIGHT CLAIM ARISES FROM PROTECTED ACTIVITY**

16        To satisfy the first prong of the anti-SLAPP analysis, Defendants need only show that the

17    challenged cause of action "arises from" one of the categories protected by the anti-SLAPP

18    statute. *See* Cal. Code Civ. Proc. § 425.16(b)(1); *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78

19    (2002). Section 425.16(e)(3) expressly protects statements "made in a place open to the public or

20    a public forum in connection with an issue of public interest." Cal. Code Civ. Proc. §

21    425.16(e)(3). Section 425.16(e)(4) expressly protects "any . . . conduct in furtherance of the

22    exercise of the constitutional right of . . . free speech in connection with a public issue or an issue

23    of public interest." *Id.* § 425.16(e)(4). "An act is in furtherance of the right of free speech if the

24    act helps to advance the right or assists in the exercise of the right." *Tamkin*, 193 Cal. App. 4th at

25    143.

26        Here, there can be no question that the speech and conduct underlying Skidmore's false

27    light claim falls squarely within the statute. The individual Defendants' three statements to

28    campus community members plainly criticized and disavowed the content of Skidmore's

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

740332.2               9               Case No. 20-cv-06415-BLF

DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES

Facebook post about her wish for the COVID-19 virus to "wipe the entire country" of China "off the planet," and advocating for a "special place in hell reserved for the f*ing Chinese and their archaic culture."  *See* Gilbert Dec., ¶¶ 7, 10, Exs. 2-3; Lu Dec., ¶ 9, Ex. 2.  The statements also explicitly affirmed UCSC campus values of tolerance, diversity and inclusiveness and called for action to ensure that more extensive training and dialogue occurs around issues related to racism. *See supra* Section II(D).  The impact of the COVID-19 pandemic on the world, the harmful statements about China, and the call to action for tolerance, diversity and inclusiveness are all issues of public interest and are precisely the sort of dialogue contemplated for protection by the anti-SLAPP statute.

In addition, Defendants released their statements precisely *because* of the public concern surrounding Skidmore's Facebook post.  Indeed, UCSC students, and even an out-of-state professor, contacted the ENVS faculty to inquire about how the Department intended to respond. Fairbairn Dec., ¶¶ 3-4; Gilbert Dec., ¶¶ 4, 10; Lu Dec., ¶¶ 3-4, 8; Press Dec., ¶¶ 3-4; Rajan Dec., ¶¶ 3-4.  Furthermore, the online news source, NextShark, apparently found the situation newsworthy and published its own statements about the Facebook post and the initial faculty response.  ECF No. 1 ¶ 27.

Because Defendants have demonstrated that their statements were communications connected with an issue of public interest, the Court must strike Skidmore's false light claim unless Skidmore can produce specific, competent, admissible evidence demonstrating a reasonable probability that she will succeed on the merits of her claim.  Cal. Code Civ. Proc. § 425.16(b)(1); *Steed*, 204 Cal. App. 4th at 124.  She cannot.

## V.  SKIDMORE CANNOT DEMONSTRATE A REASONABLE PROBABILITY OF SUCCESS ON HER FALSE LIGHT CLAIM

### A.   Defendants Are Immune From Liability For Skidmore's False Light Claim

#### 1.   Eleventh Amendment Sovereign Immunity Bars Skidmore's Claim

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S.

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

740332.2                                              10                          Case No. 20-cv-06415-BLF
DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES

1  Const. amend. XI.  "Though its language might suggest otherwise, the Eleventh Amendment has

2  long been construed to extend to suits brought against a state by its own citizens, as well as by

3  citizens of other states."  *Brooks v. Sulphur Springs Valley Elec. Co-op.*, 951 F.2d 1050, 1053 (9th

4  Cir. 1991) (internal citations omitted).  Eleventh Amendment immunity extends to state law

5  claims brought in federal court.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124-25

6  (1984); *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973-74 (9th Cir. 2004).

7  **a.     Sovereign Immunity Protects The Regents**

8         The Eleventh Amendment bestows immunity not only on unconsenting states, but on their

9  agents as well.  *Mitchell v. Los Angeles Cmty. College Dist.,* 861 F.2d 198, 201 (9th Cir. 1988),

10  *cert. denied*, 490 U.S. 1081 ("Under the [E]leventh [A]mendment, agencies of the state are

11  immune from private damage actions or suits for injunctive relief brought in federal court.");

12  *Vaughn v. Regents of Univ. of Cal.*, 504 F. Supp. 1349, 1354 (E.D. Cal. 1981).

13         The Regents is protected by Eleventh Amendment Sovereign Immunity because it is an

14  arm of the State of California established through the California Constitution.  *See* Cal. Const. art.

15  IX § 9; *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431-32 (1997); *Mitchell*, 861 F.2d at

16  201 ("California state colleges and universities are 'dependent instrumentalities of the state.'");

17  *see also Armstrong v. Meyers,* 964 F.2d 948, 949-50 (9th Cir.1992) (The Regents is an arm of the

18  state for Eleventh Amendment purposes); *BV Eng'g v. Univ. of Cal., Los Angeles,* 858 F.2d 1394,

19  1395 (9th Cir. 1988) (same); *Jackson v. Hayakawa,* 682 F.2d 1344, 1350 (9th Cir.1982) (same).

20         Thus, because The Regents is immune from Plaintiff's lawsuit based on the Eleventh

21  Amendment, Skidmore cannot prevail on her false light claim against The Regents.  *See Quade v.*

22  *Arizona Bd. of Regents*, 700 F. App'x 623, 624 (9th Cir. 2017) (applying Eleventh Amendment

23  immunity to false light claim against Board of Regents); *Wasson v. Sonoma Cty. Jr. College Dist.*,

24  4 F. Supp. 2d 893, 908 n.3 (N.D. Cal. 1997) (applying Eleventh Amendment immunity to false

25  light claim against school district and governing board).

26  / / /

27  / / /

28  / / /

1

        **b.**       **Sovereign Immunity Also Bars Claims Against The Individual**

2

                    **Defendants**

3       The Eleventh Amendment also bars damages actions against state officials in their official

4  capacities.  *See Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007); *Doe v. Lawrence*

5  *Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997).  The individual Defendants are entitled

6  to Eleventh Amendment immunity because a suit against an individual acting in his or her official

7  capacity, seeking damages from the public coffers, is in reality a suit against the state itself.  *Hafer*

8  *v. Melo,* 502 U.S. 21 (1991); *Hayakawa*, 682 F.2d at 1350.

9       Skidmore's Complaint clearly alleges she is suing all four individual Defendants regarding

10  their actions and decisions as UCSC officials.  *See* ECF No. 1 ¶ 2 ("Defendants Gilbert, Fairbairn,

11  Lu, and Rajan . . . violated Ms. Skidmore's First Amendment rights, while working in their

12  official capacities as employees of defendant the Regents of the University of California"); *see*

13  *also id.* ¶¶ 10-11 (stating the individual Defendants are sued in their official capacities).

14  Moreover, Skidmore alleges that each of the individual Defendant's actions or decisions was made

15  in the course and scope of University employment.  For example:

16      •  "On April 2, 2020 defendant Gilbert, acting in his official capacity as UCSC [ENVS]

17          'Department Chair,' caused an email to be disseminated to the entire environmental

18          studies 'community' . . . ."  *Id.* ¶ 28;

19      •  "On April 3, 2020, the UCSC [ENVS] Diversity Committee [comprised of Fairbairn,

20          Lu, and Rajan] published yet another statement, this time to the entire UCSC Campus. .

21          . ."  *Id.* ¶¶ 30, 31;

22      •  "When defendant Gilbert engaged in these acts, (including, but not limited to, the three

23          publications described above), . . . he was acting as a final policy maker for the

24          Regents."  *Id.* ¶ 54; and

25      •  "Defendants Gilbert, Fairbairn, Lu, and Rajan acted pursuant to an expressly adopted

26          policy of the Regents by conducting *de facto* discipline and punishment of Ms.

27          Skidmore."  *Id.* ¶ 57.

28  / / /

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

740332.2                      **12**                Case No. 20-cv-06415-BLF
DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES

1   Because the individual Defendants acted in their official capacities, they are therefore protected by

2   the Eleventh Amendment and cannot be sued for damages under Skidmore's false light claim.  *See*

3   *Quade*, 700 F. App'x at 624 (applying Eleventh Amendment immunity to false light claim against

4   Board of Regents and individual defendants).

5           **2.**       **Defendants Are Additionally Immune From Skidmore's False Light Claim**

6                      **Under California's Government Code**

7                 **a.**       **Government Code Section 815(a) Mandates That The Regents Cannot**

8                            **Be Sued for Tort Liability**

9           In California, all governmental tort liability is dependent on the existence of an authorizing

10  statute.  Cal. Gov't Code § 815(a); *Searcy v. Gibbel*, 177 Cal. App. 3d 792 (1986).  Specifically,

11  California Government Code section 815(a) provides that except as otherwise provided *by statute*,

12  a public entity is not liable for injury, whether such injury arises out of an act or omission of the

13  entity itself or a public employee or any other person.  Cal. Gov't Code § 815(a) (emphasis

14  added).  Here, Skidmore's false light claim is a common law claim and therefore not available

15  against The Regents as a matter of law.  *Id.*  As such, Skidmore is barred from bringing, let alone

16  prevailing on, this claim against The Regents.

17                **b.**       **Neither The Regents Nor The Individual Defendants Can Be Sued for**

18                           **Misrepresentations Under Government Code Sections 818.8 and 822.2**

19          In addition to the immunities above, the individual Defendants are immune from any

20  claims for misrepresentation pursuant to California Government Code section 822.2, which

21  provides: "A public employee acting in the scope of his employment is not liable for an injury

22  caused by his misrepresentation, whether or not such misrepresentation be negligent or intentional,

23  unless he is guilty of actual fraud, corruption or actual malice."  Cal. Gov't Code § 822.2.  The

24  thrust of Skidmore's false light claim is that the individual Defendants "misrepresent[ed] what

25  [Skidmore] said and why she said it, placing her in a false light."  ECF No. 1 ¶ 75.  Because such a

26  misrepresentation claim is not actionable against a public employee acting in his or her official

27  capacity, Skidmore is barred from bringing her false light claim against the individual Defendants

28  under Government Code section 822.2 unless she can show they are guilty of actual fraud,

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

740332.2                       13                       Case No. 20-cv-06415-BLF
DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES

1    corruption, or malice.  She cannot.

2         Here, there is not even an allegation, much less any evidence, that any of the individual

3    Defendants engaged in fraud or acted out of corruption or malice.  Rather, Defendants were

4    motivated by their desire to affirm their commitment to UCSC's values of diversity, tolerance, and

5    inclusiveness on campus.  Fairbairn Dec., ¶¶ 4, 7; Gilbert Dec., ¶¶ 6, 10; Lu Dec., ¶ 5, 8; Press

6    Dec., ¶ 8; Rajan Dec., ¶¶ 5, 9; Scholz Dec., ¶¶ 8-9, Exs. 1, 3-4.  Indeed, as a courtesy to Skidmore,

7    the ENVS faculty intentionally chose to omit her name and her project names in all of their

8    statements.  Fairbairn Dec., ¶¶ 4, 8; Gilbert Dec., ¶¶ 6-7, 10, Exs. 2-3; Lu Dec., ¶¶ 5, 9, Ex. 2;

9    Press Dec., ¶ 7; Rajan Dec., ¶ 5.  Thus, California Government Code section 822.2 provides

10   another basis, in addition to the immunities provided under the Eleventh Amendment, to grant

11   Defendants' anti-SLAPP motion as to the individual Defendants.

12        Courts have held that a similar immunity, California Government Code section 818.8,

13   exempts public entities, including The Regents, from misrepresentation claims that assert financial

14   or commercial damages.  Cal. Gov't Code § 818.8; *Lundeen Coatings Corp. v. Dep't of Water &*

15   *Power*, 232 Cal. App. 3d 816, 823 (1991) (immunity will prevail where governmental

16   misrepresentation interfered with either commercial or financial interest); *Adkins v. California*, 50

17   Cal. App. 4th 1802, 1819 (1996), overruled on other grounds in *City of Moorpark v. Superior*

18   *Court*, 18 Cal. 4th 1143 (1998) (immunities apply when negligent or intentional

19   misrepresentations involve commercial or financial interests).  As such, this absolute immunity

20   also bars Skidmore's false light claim against The Regents.

21        **3.      Academic Freedom Protects The Faculty Defendants' Statements**

22        "[T]eaching and academic writing are at the core of the official duties of teachers and

23   professors.  Such teaching and writing are 'a special concern of the First Amendment.'"  *Demers*

24   *v. Austin*, 746 F.3d 402, 411 (9th Cir. 2014), quoting *Keyshian v. Bd. of Regents*, 385 U.S. 589,

25   603 (1967) (recognizing public university professor's statements were protected by the First

26   Amendment under the academic freedom doctrine).  "The classroom is peculiarly the 'marketplace

27   of ideas.'  The Nation's future depends upon leaders trained through wide exposure to that robust

28   exchange of ideas which discovers truth 'out of a multitude of tongues, (rather) than through any

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

740332.2                                          14                            Case No. 20-cv-06415-BLF
                    DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE;
                            MEMORANDUM OF POINTS AND AUTHORITIES

1  kind of authoritative selection.'"  *Keyshian*, 385 U.S. at 603, quoting *U.S. v. Associated Press,*

2  *D.C.*, 52 F. Supp. 362, 372 (S.D.N.Y. 1943).

3        The faculty Defendants' statements about the Facebook post were undisputedly

4  expressions of academic freedom protected by the First Amendment and University policy.

5  Gilbert Dec., ¶ 7; Lu Dec., ¶¶ 5, 8; Fairbairn Dec., ¶¶ 4, 7; Rajan Dec., ¶ 9; Scholz Dec., ¶ 8, Exh.

6  2.  In an analogous case, *Rodriguez v. Maricopa Cty. Cmty. College Dist.*, 605 F.3d 703, 708 (9th

7  Cir. 2010), students challenged a college professor's statements as being racist.  The Ninth Circuit

8  held that the professor's statements, "based entirely on his point of view," were protected by the

9  First Amendment based on the academic freedom doctrine.  The Ninth Circuit noted: "We

10  therefore doubt that a college professor's expression on a matter of public concern, directed to the

11  college community, could ever constitute unlawful harassment and justify the judicial intervention

12  that plaintiffs seek."  *Rodriguez*, 605 F.3d at 710.  Moreover, "it is axiomatic that the government

13  may not silence speech because the ideas it promotes are thought to be offensive. . . . The

14  Constitution embraces such a heated exchange of views, *even (perhaps especially) when they*

15  *concern sensitive topics like race*, where the risk of conflict and insult is high."  *Id.* at 708

16  (emphasis added).

17        Accordingly, because the Ninth Circuit has recognized the faculty Defendants' rights to

18  express themselves on matters of public interest, like issues of race and diversity, Plaintiff's false

19  light claim challenging these statements cannot survive on the merits.

20        **4.    California Civil Code Section 47(c) Protected Defendants' Common Interest**

21              **Statements**

22        California Civil Code section 47(c) provides, in relevant part, that "[a] privileged

23  publication or broadcast is one made:  In a communication, without malice, to a person interested

24  therein, . . . by one who is also interested . . . or . . . who is requested by the person interested to

25  give the information."  Cal. Civ. Code § 47(c).  This "common interest" privilege applies to

26  communications reasonably calculated to further a common interest, or where the recipient has

27  requested such information.  *Deaile v. Gen. Tel. of Cal.*, 40 Cal. App. 3d 841, 845-50 (1974)

28  (sharing concerns about morale with coworkers and superiors protected as "common interest");

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

740332.2                    15                    Case No. 20-cv-06415-BLF

DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES

1    *Neal v. Gatlin*, 35 Cal. App. 3d 871, 877 (1973) (professor complaint against dean was

2    privileged).  The privilege applies when communications are made in the course of a professional

3    relationship.  *See Kashian v. Harriman*, 98 Cal. App. 4th 892, 914 (2002); *Lundquist v. Reusser*, 7

4    Cal. 4th 1193, 1196 (1994).  Where the issue of common interest is clear, it is one of law for the

5    court.  *Gantry Const. Co. v. Am. Pipe & Const. Co.*, 49 Cal. App. 3d 186, 196 (1975).

6         Here, the common interest privilege protects the faculty Defendants' statements made in

7    response to the Facebook post.  Specifically, the faculty Defendants addressed the UCSC campus

8    values of diversity, inclusiveness and tolerance, and affirmed faculty commitment to increasing

9    dialogue to facilitate and promote these values.  Fairbairn Dec., ¶¶ 4, 7; Gilbert Dec., ¶¶ 6, 10; Lu

10   Dec., ¶ 5, 8; Press Dec., ¶ 8; Rajan Dec., ¶¶ 5, 9; *see also* Scholz Dec., ¶¶ 8-9. Exs. 1-4.  The

11   statements were made in the common interest of the community and to address the concerns

12   expressed by students about the divisive and harmful nature of the Facebook comments.  Fairbairn

13   Dec., ¶ 4; Gilbert Dec., ¶ 6; Lu Dec., ¶ 5; Press Dec., ¶¶ 5-6; Rajan Dec., ¶¶ 5, 9.

14        Plaintiff may only defeat the common interest privilege by proving the statements were

15   made with actual malice.  Cal. Civ. Code § 47(c); *Talus v. Loftus*, 40 Cal. 4th 683, 721 (2007).

16   This means that Plaintiff must affirmatively show the faculty Defendants had "a state of mind

17   arising from hatred or ill will, evidencing a willingness to vex, annoy or injure [her]."  *Lundquist*,

18   7 Cal. 4th at 1204; *accord* Cal. Civ. Code § 48; *Noel v. River Hills Wilsons, Inc.*, 113 Cal. App.

19   4th 1363, 1370 (2003).  Malice may not be "inferred from the communication," (*Lundquist*, 7 Cal.

20   4th at 1204), and the privilege "does not depend at all on the truth" of the statement made.

21   *Kramer v. Ferguson*, 230 Cal. App. 2d 237, 246 (1964).  Here, there is no evidence that any of the

22   faculty Defendants acted with hatred or ill will when they made the three statements that are the

23   subject of the false light cause of action.  In fact, quite the opposite: the faculty omitted Plaintiff's

24   name and expressed their own opinions because they wanted to express to the campus community

25   their own viewpoints and commitment to UCSC values, not because of any malicious motive.

26   Fairbairn Dec., ¶ 4, 7-9; Gilbert Dec., ¶ 6, 10; Lu Dec., ¶ 5, 8-10; Press Dec., ¶¶ 5-8; Rajan Dec.,

27   ¶¶ 5-6, 9-11.  Thus, the common interest privilege further protects the faculty Defendants'

28   statements.

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

740332.2                                    16                        Case No. 20-cv-06415-BLF
DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES

**B.**      **Skidmore Cannot Prevail On The Merits Of Her False Light Claim**

Even if the Court chooses not to apply any of the immunities above, Skidmore would still not prevail on the merits of her false light claim.  To succeed on her claim, Skidmore must prove, by competent, admissible evidence, that: (1) Defendants publicly disclosed information that showed Skidmore in a false light; (2) the false light created by the disclosure would be highly offensive to a reasonable person in Skidmore's position; (3) Defendants knew the disclosure would create a false impression about Skidmore, or were negligent in determining the truth of the information or whether a false impression would be created by the disclosure; (4) Skidmore was harmed; and (5) Defendants' conduct was a substantial factor in causing Skidmore's harm.  CACI No. 1802; *see Price v. Operating Eng'rs Local Union No. 3*, 195 Cal. App. 4th 962, 970 (2011). She cannot meet this burden.

**1.**      **Defendants Never Placed Skidmore In A False Light Because They Never Identified Her In Their Statements**

Skidmore cannot show that Defendants publicly disclosed information that portrayed *her* in a false light because they deliberately omitted her name and projects from their publications. Fairbairn Dec., ¶¶ 4, 8; Gilbert Dec., ¶¶ 6-7, 10, Exs. 2-3; Lu Dec. ¶¶ 5, 9, Ex. 2; Press Dec., ¶ 7; Rajan Dec., ¶ 5.  Indeed, Defendants' publications only referred to a "member of our student community" and an ENVS "Graduate Student."  Gilbert Dec., ¶¶ 7, 10, Exs. 2-3; Lu Dec., ¶ 9, Ex. 2.  Thus, Skidmore has no evidence that any Defendant made a public statement placing her in a false light because none of their statements even identified her.

**2.**      **None Of Defendants' Statements Are Provably False**

Skidmore alleges Defendants portrayed her in a false light by "misrepresenting what she said and why she said it" and "further libelously characterizing [her] as 'racist,' 'xenophobic,' and 'genocidal.'"  ECF No. 1 ¶¶ 75, 102.  However, she has no evidence that Defendants misquoted her in any way, and Defendants' statements are non-actionable opinion that cannot form the basis of a false light claim.

First, Skidmore's claim that Defendants misrepresented what she said is false.  Defendants quoted Skidmore's Facebook post only in the April 3, 2020 statement, and they quoted her

1  verbatim.  *Compare* Lu Dec., ¶ 9, Ex. 2, *with* ECF No. 1 ¶ 33.  The fact that they did not mention

2  animal rights or trafficking in the post is irrelevant; the statements that concerned them were

3  quoted verbatim.  The context of Skidmore's post does not change the vitriolic message

4  threatening harm to an entire country and criticizing the culture of its citizens.

5          Next, as set forth *supra* at Section V(A)(3), Defendants' descriptions of Skidmore's

6  Facebook post as "appalling, hateful, and violent," "disturbingly xenophobic and deeply hurtful,"

7  and "virulently racist and hateful" are, at most, non-actionable, constitutionally-protected opinions

8  consistent with the academic freedom doctrine and cannot properly be the subject of a false light

9  claim.  *See* Section V(A)(3), *supra*; *see also Copp v. Paxton*, 45 Cal. App. 4th 829, 837-38 (1996)

10 (holding a statement of opinion cannot form the basis for a false light cause of action); *Partington*

11 *v. Bugliosi*, 56 F.3d 1147, 1159 (9th Cir. 1995) (descriptions of trial lawyer's performance do not

12 imply false assertion of fact for false light claim because "[a]uthors should have 'breathing space'

13 in order to criticize and interpret the actions and decisions of those involved in a public

14 controversy.  If they are not granted leeway in interpreting ambiguous events and actions, the

15 public dialogue that is so important to the survival of our democracy will be stifled").

16         Indeed, in order to establish a false light cause of action based on an alleged defamatory

17 statement, a plaintiff must meet the same requirements as a defamation action.  *Tamkin*, 193 Cal.

18 App. 4th 133, 149 (2011).  Under California law, defamation is the intentional publication of a

19 statement of fact which is false, unprivileged, and has a natural tendency to injure.  *Talus*, 40 Cal.

20 4th at 702.  Thus, to recover damages, a statement must be one of *fact* capable of being proven

21 either true or false.  *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 112 (2007); *Franklin v.*

22 *Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 384 (2004).  "Statements of opinion are

23 constitutionally protected" and are not actionable.  *McGarry*, 154 Cal. App. 4th at 112.  It is well

24 settled that statements using "rhetorical hyperbole," "vigorous epithet[s]," "lusty and imaginative

25 expression[s] of . . . contempt" are accorded constitutional protection.  *Ferlauto v. Hamsher*, 74

26 Cal. App. 4th 1394, 1401 (1999).  Here, by any objective measure, Defendants' statements are

27 pure opinion that cannot support her false light claim.

28 / / /

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

740332.2                                        18                          Case No. 20-cv-06415-BLF
DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES

Moreover, in the April 3, 2020 statement, the ENVS Diversity Committee raised numerous questions about the implications of the Facebook post, confirming Defendants were not even capable of making any provable factual assertions – "*whether* she has other, possibly physically violent, partners; *whether* she has access to guns or other means of causing bodily harm; and *whether* she has supporters of her viewpoints amongst the graduate student community and perhaps even the faculty. *As things stand, we do not have definitive answers to these important questions*, and in the absence of these answers, some amongst us are fearful for our health, safety and wellbeing." Lu Dec., ¶ 9, Ex. 2 (emphasis added). The faculty Defendants' posing of questions for follow-up concerning controversial statements in the Facebook post are simply not assertions of fact that could support a false light claim. *Partington*, 56 F.3d at 1157 (finding no provable assertions of fact where defendant's "use of a question mark serves two purpose[s]: it makes clear his lack of definitive knowledge about the issue and invites the reader to consider the possibility of other justifications. . . ."); *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1195 (9th Cir. 1989), quoting *Ault v. Hustler Magazine, Inc.*, 860 F.2d 877, 881 (9th Cir. 1988) ("there is a heated and spirited debate on pornography of which this article is a part, and in which epithets, fiery rhetoric and hyperbole are expected.").

Thus, the faculty Defendants' statements are not provably false and cannot form the basis of an actionable false light claim.

### 3.    Defendants' Statements Are Not "Highly Offensive"

Further, Plaintiff cannot show a reasonable probability that a reasonable person would find any of the three faculty publications issued in response to Skidmore's Facebook post "highly offensive," particularly given Skidmore's controversial statements advocating harm to China and its people, and the need for Defendants to affirm campus values of diversity and inclusion. *See supra* Section II(D). Defendants' statements cannot be considered a "hysterical over-reaction," ECF No. 1 ¶ 34, especially in the wake of violent school shootings at Virginia Tech, Parkland and Columbine High Schools, to name a few, and the highly publicized anti-Asian sentiments that spurred as a result of the COVID-19 pandemic. Defendants' statements disavowed acts that potentially threatened the safety of campus community members, at least several of whom were

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

740332.2                                19                         Case No. 20-cv-06415-BLF
DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES

1  "scared" and "frightened" by Skidmore's post.  Fairbairn Dec., ¶ 3-4; Gilbert Dec., ¶¶ 4-7, 10,
2  Exs. 2-3; Lu Dec., ¶¶ 8-9, Ex. 2; Rajan Dec., ¶¶ 5, 9.

3        **4.      Skidmore Was Not Harmed Because Of Defendants' Statements**

4        Finally, Skidmore cannot prove (in fact, she has not even alleged) that she suffered any
5  tangible harm as a result of Defendants' statements.  With respect to her studies, she remains a
6  PhD student in good standing and on schedule to graduate on time. ECF No. 1 ¶¶ 13, 15; Gilbert
7  Dec., ¶ 11; Loik Dec., ¶ 9; Press Dec., ¶ 11.  When her advisor left UCSC this Summer, she easily
8  secured a new advisor who helped arrange for another dissertation review committee to ensure her
9  graduation plans remained unfazed.  Loik Dec., ¶¶ 3-8, Exs. 1-2.

10       While Skidmore alleges she experienced "injury to her reputation" and "emotional
11 distress," and "lost one of several career advancement opportunities, including but not limited to,
12 the cancellation of a National Geographic sponsored program and the radio segment on BYU
13 radio's show, 'Top of Mind,' after the faculty published its 'responses' and statements,'" ECF No.
14 1 ¶¶ 67, 108, 109, Skidmore will not be able to proffer any evidence that any specific statement by
15 a Defendant was a factor, let alone a substantial factor, in causing her distress or injury to her
16 reputation, or that she lost these "career advancement" opportunities *because* of Defendants'
17 publications.  For example, she has not alleged, and she cannot prove, that Defendants even knew
18 about these "advancement" opportunities or somehow contacted National Geographic or BYU to
19 insist that her alleged opportunities be revoked.  Fairbairn Dec., ¶ 11; Gilbert Dec., ¶ 12; Lu Dec.,
20 ¶ 12; Press Dec., ¶ 12; Rajan Dec., ¶ 13.

21       For all of the foregoing reasons, Skidmore will not be able to show a reasonable
22 probability of prevailing on her false light claim, and this cause of action should be stricken from
23 her Complaint.

24  **VI.  DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS**

25       Under the anti-SLAPP statute, the prevailing defendant "shall be entitled" to recover its
26 attorney's fees and costs.  Cal. Code Civ. Proc. § 425.16(c).  A fee award to the prevailing party is
27 mandatory.  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001).  The fee request may be included
28 in the anti-SLAPP motion, in a separate motion, or in a cost bill after judgment.  *Carpenter v. Jack*

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

740332.2                                         20                     Case No. 20-cv-06415-BLF
DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES

*in the Box Corp.*, 151 Cal. App. 4th 454, 461 (2007).  Defendants request that they be awarded their fees and costs in connection with this motion, in an amount to be determined later by this Court.

## VII.  CONCLUSION

Based on the foregoing, Defendants respectfully request this Court strike Skidmore's false light claim (Cause of Action No. 3) from her Complaint.  This claim arises from conduct made in furtherance of exercising Defendants' free speech rights (including academic freedom).  Skidmore is also barred from bringing this claim based on the Eleventh Amendment and other immunities and privileges, and Skidmore cannot meet her burden to show she will prevail.

Defendants also respectfully request this Court award their attorney's fees and costs pursuant to Code of Civil Procedure section 425.16.

Dated:  November 5, 2020                         PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP


By:        */s/ Joanne Alnajjar Buser*
                SANDRA L. McDONOUGH
                JOANNE ALNAJJAR BUSER
                JACQUELINE SEITER
                Attorneys for Defendants The Regents of the
                University of California, Gregory S. Gilbert,
                Madeleine Fairbairn, Flora Lu, and S. Ravi Rajan

DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES

**PROOF OF SERVICE**

**Skidmore v. The Regents of the University of California, et al.**
**Case No. 5:20-cv-06415**

**STATE OF CALIFORNIA, COUNTY OF SAN DIEGO**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of San Diego, State of California.  My business address is 101 West Broadway, Ninth Floor, San Diego, CA 92101-8285.

On November 5, 2020, I served true copies of the following document(s) described as

- **DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES**;

- **DECLARATION OF DEFENDANT MADELEINE FAIRBAIRN IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE**;

- **DECLARATION OF DEFENDANT GREGORY GILBERT IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE;**

- **DECLARATION OF MICHAEL LOIK IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE;**

- **DECLARATION OF DEFENDANT FLORA LU IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE;**

- **DECLARATION OF DANIEL PRESS IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE;**

- **DECLARATION OF DEFENDANT S. RAVI RAJAN IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE;**

- **DECLARATION OF TERESA MARIA LINDA SCHOLZ IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE; and**

- **[PROPOSED] ORDER GRANTING DEFENDANTS' SPECIAL MOTION TO STRIKE** on the interested parties in this action as follows:

Mark E. Ellis, SBN 127159
Omid Shabani, SBN 267447
Timothy S. Lam, SBN 319831, Email:
ELLIS LAW GROUP, LLP
1425 River Park Drive, Suite 400
Sacramento, CA 95815
Tel: (916) 283-8820
Fax: (916) 283-8821
Email: mellis@ellislawgrp.com
        oshabani@ellislawgrp.com
        tlam@ellislawgrp.com

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 5, 2020, at San Diego, California.

Amy R. Dickey

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE;
MEMORANDUM OF POINTS AND AUTHORITIES